**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JOSEPH VERRIER,**

**Plaintiff,**

**vs.** **Case No. 4:25-cv-273-TKW-MAF**

**MELANIE WEAVER, et al.,**

**Defendants.**
**______________________/**

**REPORT AND RECOMMENDATION**

Plaintiff, proceeding *pro se* and *in forma pauperis*, initiated this action by filing a civil rights complaint pursuant to 42 U.S.C § 1983 against the Florida Department of Corrections ("DOC") and employees of the DOC Probation Office. ECF Nos. 1, 5. The operative complaint is the third amended complaint ("complaint"), in which Plaintiff raises due process and equal protection claims under the Fourteen Amendment, a First Amendment freedom of association claim, and conspiracy under 42 U.S.C. § 1985. ECF No. 30. Before the Court is Defendant's motion to dismiss for lack of subject matter jurisdiction and failure to state a claim. ECF No. 34. Plaintiff filed a response in opposition. ECF No. 37. The motion is ripe for review.

Page 2 of 28

## I. Background

Plaintiff was convicted of sex offenses in Wisconsin and is currently serving terms of extended supervision[1] and probation in Florida pursuant to the Interstate Compact for Adult Offender Supervision ("Interstate Compact" or "ICAOS").[2] *See* ECF Nos. 30; 34-1 at 11. He objects to the conditions of supervision imposed by Florida, particularly the complete restriction of access to the internet. See ECF No. 30.

### A. Wisconsin Convictions

On February 24, 2010, Plaintiff pled guilty to Child Enticement-Prostitution and was sentenced to four years of confinement, followed by six years of extended supervision. State v. Verrier, Case No. 2009CF232 (WI Cir., May 25, 2010) ("Outagamie case"), judgment am. (Apr. 15, 2015); see ECF Nos. 34-9; 34-10. The court imposed several conditions, including, "[Verrier] may have limited access to a computer provided he install software to monitor sites and activities by the user . . . . Agent to have access to computer and its contents upon demand and without the need of a warrant." ECF No. 34-9 at 2.

[1] "Extended Supervision" is a term used in Wisconsin for the type of supervision that is referred to as "parole" in Florida and the Interstate Compact. ECF No. 34-1 at 11.

[2] The ICAOS is a national program that oversees individuals under supervision moving across state lines. https://interstatecompact.org/ (last visited July 29, 2026), adopted and codified in Florida, Fla. Stat. § 941.56.

Page 3 of 28

On July 21, 2010, Plaintiff pled no contest to Child Enticement-Sexual Contact. State v. Verrier, Case No. 2009CF153 (Wis. Cir., July 21, 2010) ("Manitowoc case"), judgment am. (July 11, 2018 & Jan. 6, 2025) at ECF Nos. 34-8, 34-11. Plaintiff's prison sentence was withheld, and he was placed on probation for fourteen years. One of several conditions of parole was "[n]o use of a computer or internet access except with the consent of his agent." Id. at 2. On July 11, 2018, Plaintiff's probation was revoked after multiple violations of probation and Plaintiff was sentenced to four years of confinement followed by six years of extended supervision. See ECF No. 34-12.

On April 15, 2015, in the Outagamie case, the court amended the judgment and sentence to correct a typographical error and to add a comment allowing Plaintiff to have contact with his children. ECF No. 34-10 at 3. The amended judgment still contained the condition of limited computer access. Id.

On October 15, 2021, while on supervision in Florida, Plaintiff moved the Wisconsin court in the Manitowoc case to modify the amended judgment to allow him to use a computer and access the internet, with a Wisconsin agent to monitor his computer activities. See ECF No. 37-1 at 8–9. Plaintiff argued that Florida DOC agents lacked the authority to change or modify the

terms of supervision and that the denial of all internet access is unconstitutional. Id. On October 26, 2021, the Wisconsin court denied the motion, finding:

> The Amended Judgment of Conviction in this matter does not prohibit the Defendant from engaging in any of the activities, whether online or off, he seeks to engage in. Instead it requires that those activities be monitored. The Defendant stands convicted of utilizing internet access and emails to entice a child into sexual activity and prostitution. This Court finds no basis or need to modify the Judgment of Conviction in any way, nor does it find that doing so would be consistent with the need to protect the public, nor consistent with the intent and purpose of the Court when the Amended Judgment of Conviction was issued in 2015. The Court finds no new factor for sentence modification exists.

Id. On January 6, 2025, the court in the Manitowoc case amended the judgment for consistency with the conditions of the amended judgment in the Outagamie case. See ECF No. 34-11. Thus, the Manitowoc case also contained the following condition in the amended judgment: "The Defendant [Verrier] may have limited access to a computer provided he install software to monitor sites and activities by the user…Agent to have access to computer and its contents upon demand and without the need of a warrant." Id.

### B. Supervision in Florida and Violations of Probation

In November 2013, Plaintiff requested to transfer his supervision from Wisconsin to Florida to serve his terms of extended supervision and

probation. On February 24, 2014, Plaintiff's request was approved, and he moved to Florida through the Interstate Compact. ECF. No. 34-1 at 4.

Plaintiff violated the terms of supervision in December 2014 by being away from his electronic monitoring device; in January 2016 by having an email account; and in March 2016, when a warrantless search of Plaintiff's residence yielded pornographic materials on laptops and other electronic devices. Consequently, Plaintiff was transported back to Wisconsin. Id.

In September 2016, Plaintiff made a second request to transfer to Florida. Id. at 5. Florida approved the transfer with the imposition of Florida's standard conditions of probation and Florida sex offender conditions. Additionally, Plaintiff was not permitted to have internet access. On October 14, 2016, Plaintiff returned to Florida. Id.

In December 2016, Plaintiff requested internet access, which Florida denied. Plaintiff's request was sent to Wisconsin, which confirmed that Plaintiff was not to have internet access. Id.

In January 2017, Plaintiff again violated the terms of supervision by using an email account that Plaintiff claimed was deactivated. Florida sent a violation report to Wisconsin, which determined Florida should continue supervision and impose appropriate sanctions. Id. Upon this information, Florida imposed an additional condition, that Plaintiff have "no contact with

any electronic devices of any kind that can access the internet or any form of social media and no access to the internet of any kind for the remainder of supervision." Id. Plaintiff was again instructed to deactivate his email account and not to access any electronics. Id.

In January 2018, Plaintiff violated the conditions of supervision by using an internet dating site under a different name; a warrantless search of Plaintiff's residence that yielded pornographic materials and two SIM cards with 390 pornographic photos of a young woman; and he possessed a tablet. ECF No. 34-1 at 6; see also ECF No. 34-12. As result of these violations, Plaintiff was transferred back to Wisconsin on April 16, 2018. ECF No. 34-1 at 6.

In April 2021, Plaintiff made a third request to be transferred to Florida for his period of extended supervision. Id. He signed an agreement to comply with Florida's conditions and a prohibition on internet access, including social media, during his term of supervision. However, Florida denied the proposed transfer because authorities were skeptical Plaintiff could find employment without using the internet. Id.

In June 2021, Plaintiff made a fourth transfer request under the same conditions, except that Plaintiff and his family would comply with the no-internet restriction and Plaintiff would seek manual labor employment. Id. at

7. The next day, Florida rejected the request for the same reason it had rejected Plaintiff's third request. Id.

In July 2021, Plaintiff made a fifth request to transfer to Florida. Florida accepted Plaintiff's transfer on the condition of compliance with the Florida standard conditions of supervision, the sex offender conditions, a requirement not to access the internet, reside where there is internet access, or access to any device with internet access. Id. On September 2, 2021, Florida approved Plaintiff's transfer request, and Plaintiff's supervision was transferred to Florida.

On January 6, 2025, the Wisconsin court modified Plaintiff's judgment in the Manitowoc case for consistency with the judgment in the Outagamie case allowing for limited, monitored computer use. ECF No. 34-11 at 4.

### B. Relevant prior cases and procedural history

Prior to this case, Plaintiff brought three separate federal cases challenging the restrictions to the internet imposed by Florida.

First, on December 29, 2014, Plaintiff filed an action against Lee County DOC Supervisors, asserting equal protection and due process claims for improper supervision under ICAOS and retaliation for attending a family court hearing. Verrier v. Perrino, Case No. 2:14-cv-744-JES-CM (M.D. Fla. 2014). On the merits, the court dismissed some claims for failure to state a

claim, and it granted summary judgment in the defendants' favor on the remaining counts. Id., ECF Nos. 46, 164.

On April 14, 2017, Plaintiff filed a second action in the Middle District of Florida raising claims nearly identical to the claims raised in Perrino. Verrier v. Reno, Case No. 2:17-cv-204-FtM-99CM (M.D. Fla. 2017). The court dismissed the case without prejudice for several reasons. With respect to Plaintiff's request for access to the internet, the court followed the reasoning in Perrino and determined that the court lacked subject matter jurisdiction under the *Rooker-Feldman* doctrine. *See* id. at ECF Nos. 9, 11, 13. The court held: "to the extent Verrier believes his probation conditions are inappropriate, he should take appropriate steps in the state court to modify his probation conditions." Id. (quoting Perrino, Case No. 2:14- cv-744-FtM-29CM, at 4).

On December 16, 2021, Plaintiff filed a case raising similar claims in this district. Verrier v. Weaver, Case No. 4:21-cv-500-MW-MJF (N.D. Fla. 2021). After Defendants filed a motion to dismiss for lack of subject matter jurisdiction, Plaintiff, through counsel, filed a motion for voluntary dismissal on September 9, 2024. Id. at ECF Nos. 108, 121. Accordingly, on September 10, 2024, the court granted the motion for voluntary dismissal and entered Judgment Id. at ECF No. 129.

On June 26, 2025, Plaintiff brought the instant civil rights action against DOC and several of its employees, all in their official and individual capacities: Probation Officer Melanie Weaver, Circuit Administrator Brad Rouskey, and District Supervisor Timothy Strickland. ECF No. 30. He again challenges the 100 percent ban on internet access imposed by Florida as unconstitutional. Id. Plaintiff seeks compensatory damages and declaratory and injunctive relief compelling Defendants to impose only conditions authorized by state statute and not requiring Plaintiff to comply with additional, enhanced or modified conditions of supervision imposed by the court. Id.

## II. Standards of Review

A motion to dismiss under Rule 12(b)(1) can raise either a "facial" or a "factual" challenge to subject matter jurisdiction. Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir. 1990). Where the defendant raises a facial challenge to the Court's jurisdiction under Rule 12(b)(1), "the court is merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." Id. Factual attacks challenge "the existence of subject-matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Id.

(citation omitted). "No presumption of truth attaches to the plaintiff's allegations, and the existence of a disputed material fact does not prevent the trial court from evaluating for itself the merits of the jurisdictional claim." Mendez v. Cuccinelli, 467 F. Supp. 3d 1249, 1254 (S.D. Fla. 2020) (citing Lawrence, 919 F.2d at 1529).

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must allege enough facts that show entitlement to relief is plausible, meaning the Court can draw "a reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). This "does not require detailed factual allegations," but a complaint must include more than conclusory language or "naked assertions devoid of" sufficient facts. Id. Pleadings by a pro se party are viewed liberally. The main focus is whether Plaintiff's complaint provides Defendant with "fair notice of the basis for [the] claims." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514–15 (2002) (noting that Rule 8's pleading standard is designed "without regard to whether a claim will succeed on the merits").

## III. Discussion

### A. The *Rooker-Feldman* Doctrine[3]

Defendants argue that this Court lacks subject matter jurisdiction over this action and Plaintiff's claims are barred under the *Rooker-Feldman* doctrine. ECF No. 34 at 6–12. The United States Supreme Court recently re-affirmed the *Rooker-Feldman* doctrine, which generally provides that "federal district courts lack jurisdiction over 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" T. M. v. Univ. of Md. Med. Sys. Corp., 608 U.S. ----, 146 S. Ct. 1739, 1744 (2026) (quoting Exxon Mobil Corp. v. Saudi Basic Indust. Corp., 544 U.S. 280, 284 (2005)). Under Rooker, a federal district court lacks jurisdiction to "declare that a state court's judgment was 'null and void' under the federal Constitution because doing so 'would be an exercise of appellate jurisdiction,' which only the Supreme Court possesses." T.M., 146 S. Ct. 1739, 1745–46 (quoting Rooker, 263 U.S. at 414–15, 416) (cleaned up).

[3] The *Rooker-Feldman* doctrine is named after two cases: Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); D.C. Ct. of App. v. Feldman, 460 U.S. 462 (1983).

As discussed in this Court's order of July 21, 2025, ECF No. 5, Plaintiff's constitutional challenges to the conditions imposed by Florida have already been litigated in the Middle District of Florida and in this district. This Court is guided by the district courts' rulings in Plaintiff's prior actions.

In Verrier v. Perrino, Case No. 2:14-cv-744-JES-CM (M.D. Fla. 2014), Plaintiff sought the return of his computer seized as evidence that he violated the terms of his supervision. The court denied the request, holding Plaintiff "should take steps in the state court proceedings to obtain the return of, and authorization to use, his electronic devices." Id., ECF No. 65 at 3. Plaintiff also sought declaratory and injunctive relief allowing him to access the internet, which the court denied, finding Plaintiff failed to provide "any basis to justify this Court interfering with the domestic and/or criminal state court proceedings." Id. at ECF No. 77 at 3. The court granted summary judgment on Plaintiff's equal protection claim, finding "Plaintiff has failed to identify one similarly situated probationer who has been treated differently than he has. Instead, he relies on vague, broad assertions that he is being treated differently than similarly situated probations." Id. at ECF No. 164 at 23.

In Verrier v. Reno, Case No. 2:17-cv-204-FtM-99CM (M.D. Fla. Ft. Myers Div. 2017), the court followed the rationale in Perrino and declined "to interfere with state court proceedings and nullify certain of his probation

conditions." Id. at ECF No. 9 at 6–7. Citing to *Rooker-Feldman*, the court held, "to the extent Verrier believes his probation conditions are inappropriate, he should take appropriate steps in the state court to modify his probation conditions." Id. at 7.

As discussed previously, in Verrier v. Weaver, Case No. 4:21-cv-500-MW-MJF (N.D. Fla. 2021), after the defendants filed a motion to dismiss alleging lack of subject matter jurisdiction, ECF No. 108, Plaintiff filed a motion for voluntary dismissal acknowledging *Rooker-Feldman* controlled and noting Plaintiff intended to address the matter in Wisconsin state court. Id. at ECF No. 12. Plaintiff's motion was granted and the case was dismissed without prejudice for lack of subject matter jurisdiction." Id. at ECF No. 122.

On June 2, 2025, Plaintiff filed a motion to reinstate the case. Id. at ECF No. 130. In his motion, Plaintiff argued that he exhausted his remedies in Wisconsin state court, citing the amended judgment of conviction in the Outagamie case on January 1, 2025. Id. After a telephonic hearing, the court denied Plaintiff's motion but allowed him leave to refile his claims under a new case number. Id. at ECF No. 141.

In accordance with that order, the Plaintiff filed the instant case. ECF No. 1. In the complaint, Plaintiff again challenges the conditions imposed by Florida, particularly the prohibition on internet access, and argues the

conditions of ICOTS govern the supervision of adult offenders. See ECF No. 30. Plaintiff relies on two rules of ICOTS. Rule 4.101 provides:

> (a) A receiving state shall supervise individuals transferred under the interstate compact in a manner consistent with the supervision and risk level of other similarly sentenced individuals sentenced in the receiving state. (b) If a supervised individual violates conditions of supervision, the individual may be sanctioned in the receiving state during the term of supervision in a manner consistent with similarly sentenced individuals in the receiving state.

ICOTS Chapter 4, https://interstatecompact.org/icaos-rules/chapter/ch4 (last visited July 31, 2026). Similarly, Rule 4.103 provides:

> (a) At the time of acceptance or during the term of supervision, the receiving state may impose a condition on a supervised individual if that condition would have been imposed on a supervised individual sentenced in the receiving state.
> (b) A receiving state shall notify a sending state that it intends to impose, or has imposed, a condition on the supervised individual.

Id.

Plaintiff indicates he does not challenge the conditions established by the state of Wisconsin but instead challenges special conditions 3, 10, 11, 12, and 14 of the Florida Standard Conditions of Supervision. ECF. 37-1 at 3–4. In particular, special condition 11 provides: “You shall not access the internet or similar computer services during the term of your parole, which includes all types of social media.” Special condition 14 provided that Plaintiff “[s]hall not reside at a residence with internet or devices to access the

internet, entire dwelling." Id. On September 2, 2021, Plaintiff signed the document under the line stating, "I acknowledge receipt of a copy of this order and that the conditions have been explained to me and I agree to abide by them." Id. at 4. Underneath his signature, Plaintiff wrote, "I understand there [sic] conditions and agree to follow, however, I have issues as to there [sic] legality and plan to appeal." Id.

On October 15, 2021, in the Outagamie County case, Plaintiff filed a motion to modify the conditions of extended supervision. See ECF. 37-1 at 8. In its order, the Wisconsin court cited to the computer condition contained in the April 15, 2025, amended judgment:

> [Verrier] may have limited access to a computer provided he install software to monitor sites and activities by the user. Such software shall be installed by someone approved by the agent, and provides alerts by e-mail to the agent. Agent to have access to computer and [its] contents upon demand without the need of a warrant.

Id.[4] Plaintiff argued that Florida DOC agents lack the authority to change or modify the conditions of supervision and requested that his computer activities be monitored by a Wisconsin agent. See id. at 9. The court denied the motion, finding that the amended judgment did not prohibit Plaintiff from engaging in such activities but instead required the activities to be monitored.

---

[4] This language is unchanged from the original judgment of May 19, 2010. ECF No. 34-9 at 2.

Id. The court further reasoned:

> [Verrier] stands convicted of utilizing internet access and emails to entice a child into sexual activity and prostitution. This Court finds no basis or need to modify the Judgement of Conviction in any way, nor does it find that doing so would be consistent with the need to protect the public, nor consistent with the intent and purpose of the Court when the Amended Judgment of Conviction was issued in 2015. The Court finds no new factor for sentence modification exists.

Id.

Plaintiff indicates that he "returned to his Manitowoc County court requesting agent approval of internet to be removed as a condition, to address the Rooker-Feldman arguments of the Florida Defendants." ECF No. 30 at 14. Plaintiff argues that the January 6, 2025, amendment to the Manitowoc County judgment "removed agent discretion, and gave Varrier access to the internet with monitoring." Id. This reading is incorrect. The original July 21, 2010, judgment in the Manitowoc case contained a condition stating, "No use of computer or internet access except with the consent of his agent." ECF No. 34-8. The January 6, 2025, Manitowoc judgment was amended simply for consistency with the judgment in the Outagamie case with respect to computer access, which had been in place since his original 2010 sentence in the Outagamie case:

> [Verrier] may have limited access to a computer provided he install software to monitor sites and activities by the user. Such software shall be installed by someone approved by the agent,

> and provides alerts by e-mail to the agent. Agent to have access to computer and [its] contents upon demand without the need of a warrant.

ECF Nos. 34-9, 34-11. Plaintiff did not appeal the amended judgment in either case; therefore, the amended judgments are final under Wisconsin law. *See* Wis. Stat. § 808.04(1).

The *Rooker-Feldman* doctrine "applies both to federal claims raised in the state court and to those 'inextricably intertwined' with the state court's judgment." May v. Morgan Cnty. Ga., 878 F.3d 1001, 1005 (11th Cir. 2017) (quotations omitted).

> A claim is 'inextricably intertwined' if it would 'effectively nullify' the state court judgment, or [if] it 'succeeds only to the extent that the state court wrongly decided the issues.'" *Id.* (citations omitted). Though the federal case may not be styled as an appeal of a state court judgment, *Rooker-Feldman* is not so easily bypassed. A claim that at its heart challenges the state court decision itself—and not the statute or law which underlies that decision—falls within the doctrine because it "complain[s] of injuries caused by state-court judgments" and "invite[s] . . . . review and rejection of those judgments."

Id. (quoting Exxon Mobil, 544 U.S. at 284).

In this case, Plaintiff's constitutional claims are inextricably intertwined the amended judgments in the underlying Wisconsin cases leading to Plaintiff's supervision in Florida. If this Court were to adopt Plaintiff's reading of the amended judgments, such a ruling would conflict with the Wisconsin

Page 18 of 28

court's denial of Plaintiff's request for modification of the terms of supervision. See ECF No. 37-1.

Additionally, Plaintiff has repeated his claims in arguments in his prior cases, and this Court is persuaded by the decisions in Plaintiff's prior federal cases that were dismissed for lack of subject matter jurisdiction. In Verrier v. Perrino, the court denied Plaintiff's motion for declaratory and injunctive relief allowing him access to the internet, finding "Plaintiff once again presents no legal basis for the relief requested. Plaintiff has not presented any basis to justify this Court interfering with the domestic and/or criminal state court proceedings." Case No. 2:14-cv-744-FtM-29CM, ECF No. 77 at 3; see also Verrier v. Reno, Case No. 2:17-cv-00204-SPC-CM, ECF No. 9 at 7 (emphasis added). Following the holding in Verrier v. Perrino, the court determined that, "to the extent Verrier believes his probation conditions are inappropriate, he should take appropriate steps in the state court to modify his probation conditions." Id.

Finally, the claims in Plaintiff's earlier case in this district are similar to the claims in this case, and though formatted differently, Defendants' motions to dismiss are virtually identical to their motion to dismiss in this case. Compare Case No. 4:21-cv-500-MW-MJF, ECF No. 108, with Case 4:25-cv-00273-TKW-MAF, ECF No. 35. By his motion for voluntary

Page 19 of 28

dismissal, Plaintiff conceded that the court lacked subject matter jurisdiction and the case was dismissed on that basis. Case No. 4:21-cv-500-MW-MJF, ECF No. 121.

Although Plaintiff sought relief from the Manitowoc court, the amended judgment of January 6, 2025, did not change the discretion afforded to a probation agent to oversee Plaintiff's computer activities. More significantly, Wisconsin's amended conditions did not invalidate Florida's conditions of supervision, particularly the complete prohibition of internet access, nor did it give permission for Plaintiff to disregard the conditions of supervision imposed by Florida.

Given that Plaintiff has, in this case, raised the same grounds for challenging Florida's imposition of internet restrictions as he has in prior federal actions, this Court should again find this action barred by the *Rooker-Feldman* doctrine.

**B. Heck v. Humphrey**

Defendants argue that Plaintiff's claims for damages related to internet are barred by Heck v. Humphrey, 512 U.S. 477 (1994). Habeas corpus is the exclusive remedy for a prisoner who challenges "the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." Id. at 481; Hutcherson v.

Page 20 of 28

Riley, 468 F.3d 750, 754 (11th Cir. 2006) (explaining that federal habeas corpus petition and civil rights complaints "are mutually exclusive" avenues of relief and "if a claim can be raised in a federal habeas petition, that same claim cannot be raised in a separate § 1983 civil rights action").

Heck prohibits the use of § 1983 to challenge the validity of a prior conviction or sentence to obtain release from custody or monetary damages. Olivier v. Brandon, Miss., 607 U.S. 552, 556 (2026). When a prisoner seeks damages in a § 1983 action, the district court must consider whether a judgment in the plaintiff's favor would invalidate his conviction or sentence. Id. at 562–63 (quoting Preiser, 411 U.S. at 487). "The Heck bar on '§ 1983 damages . . . necessarily require[s] the plaintiff to prove the unlawfulness of his conviction or confinement.'" Id. (quoting Preiser, 411 U.S. at 484). "Under Heck, a § 1983 plaintiff must prove that his 'conviction or sentence has been reversed on direct appeal, expunged by executive order, invalidated by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus'" to recover damages for an allegedly unconstitutional conviction or imprisonment." Vega v. Kahle, No. 23-12065, 2025 WL 3540349, at *2 (11th Cir. Dec. 10, 2025) (citing Heck, 512 U.S. at 486–87).

In the Eleventh Circuit, it remains "an open question as to whether Heck applies to situations where, as here, a § 1983 plaintiff may no longer

seek habeas relief because [he] is no longer in custody. Teagan v. McDonough, 949 F.3d 670, 678 (11th Cir. 2020) (citing to Muhammad v. Close, 540 U.S. 749, 752 n.2 (2004)); see also Topa v. Melendez, 739 F. App'x 516, 519 n.2 (11th Cir. 2018) (discussing a "circuit split" on the issue of Heck and claimants who may no longer bring a habeas action).

When a prisoner seeks damages in a § 1983 action, the district court must consider whether a judgment in the plaintiff's favor would invalidate his conviction or sentence. Id. at 562–63 (quoting Preiser, 411 U.S. at 487). In this case, an award of damages would imply, at least, that his conviction for violating probation is invalid. See Moncrieffe v. Broward Cnty. State Attorney's Off., 516 F. App'x 806, 807 (11th Cir. 2013).

### C. Failure to State a Claim

Defendants also seek dismissal of this case on the merits under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff claims that Defendants violated his equal protection rights by supervising out-of-state offenders (such as Plaintiff) in a manner inconsistent with its supervision of in-state offenders. Plaintiff highlights ICAOS Rule 4.103-1, which provides, "The sending state shall give the same force and effect to conditions imposed by a receiving state as if those conditions had been imposed by the sending state." ICAOS Rule 4.103-1, https://interstatecompact.org/icaos-

Page 22 of 28

rules/chapter/ch4/rule-4-103-1 (last visited July 31, 2026; See, e.g., ECF Nos. 30 at 10, 11–12; 37 at 2, 7, 17.

Plaintiff acknowledges that the Florida court determines the terms and conditions of probation under Fla. Stat. § 948.30(1) and argues that Florida may not impose non-standard conditions beyond those ordered by the Wisconsin court or mandated by state statute. ECF No. 30 at 9–10. Although § 948.03 does not identify restrictions on computer use or internet access, the statute contains a catch-all provision: "The enumeration of specific kinds of terms and conditions does not prevent the court from adding thereto such other or others as it considers proper." Fla. Stat. § 948.03(2).

To the extent that Plaintiff claims in-state sex offenders were not subject to the same restrictions for computer and internet access, Florida law establishes a conditional release program. Fla. Stat. § 947.1405. Under this statute, a releasee is prohibited from "viewing, owning, or possessing any obscene, pornographic, or sexually stimulating visual or auditory material, including telephone, electronic media, computer programs, or computer services that are relevant to the offender's deviant behavior pattern." Id. § 947.1405(7)(a)(7).

These provisions of the Florida Statutes provide a basis for the denial of internet access given Plaintiff's status as a sexual offender. The Eleventh

Circuit has upheld a probation condition prohibiting a sex offender from accessing the internet because "[w]hile recognizing the value of the internet for legitimate purposes, we are also cognizant of the dangers to the public when sex offenders are on the line." United States v. Taylor, 338 F.3d 1280, 1285 (11th Cir. 2003) (citation omitted); United States v. Zinn, 321 F.3d 1084, 1092–93 (11th Cir. 2003).

As to the merits of Plaintiff's equal protection claim under the Fourteenth Amendment, Plaintiff "must demonstrate that (1) he is similarly situated with other prisoners who received more favorable treatment; and (2) his discriminatory treatment was based on some constitutionally protected interest such as race." Jones v. Ray, 279 F.3d 944, 946–47 (11th Cir. 2001) (internal quotation marks omitted) (quoting Damiano v. Fla. Parole & Prob. Comm'n, 785 F.2d 929, 932–33 (11th Cir. 1986) (per curiam)). The Eleventh Circuit recognizes equal protection claims under a "class of one" theory where the plaintiff does not allege discrimination against a protected class but instead asserts he has been treated differently from other similarly situated individuals with no rational basis for the difference in treatment. Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1307 (11th Cir. 2009) (quoting Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1032 n.1 (11th Cir. 2008)).

Page 24 of 28

As the court in Perino found, "Plaintiff has still failed to identify one similarly situated probationer who has been treated differently than he has. Instead, he relies on vague, broad assertions that he is being treated differently than similarly situated probationers." Perino, Case 2:14-cv-00744-JES-CM, ECF No. 164 at 23–24 (quoting Sweet v. Dept. of Corr., 467 F.3d 1311, 1319 (11th Cir. 2006)). Plaintiff points to Defendant Rouskey's admission that he was unaware of any other in-state Florida probationer with a 100 percent internet ban. ECF No. 37 at 14. However, the Eleventh Circuit has upheld restrictions on internet access sex offenders, recognizing the value of the internet for legitimate purposes as well as the dangers to the public when sex offenders are on-line. United States v. Taylor, 338 F.3d 1280, 1285 (11th Cir. 2003) (following United States v. Zinn, 321 F.3d 1084, 1089–90 (11th Cir. 2003)).

Finally, the record establishes that Plaintiff agreed to the conditions imposed by Florida. See ECF No. 34-3. When Florida rejected Plaintiff's transfer requests, Plaintiff even offered compliance with additional conditions to convince Florida to agree to his requested transfers. ECF 34-1 at 6–7. When submitting his third transfer request on April 29, 2021, Plaintiff agreed to submit to Florida's standard conditions and sex offender conditions, as well as agreeing to the prohibition on accessing the internet during his term

of supervision, including social media. Id. at 6. When Florida rejected the transfer, on June 15, 2021, Plaintiff submitted a fourth request that also indicated Plaintiff and his family would abide by the internet restriction, as Plaintiff would only seek manual labor employment. Id. at 7. On July 20, 2021, Plaintiff submitted a fifth transfer request, which Florida accepted with Plaintiff's assent to the imposition of Florida's standard conditions and sex offender conditions, and a requirement that he may not have any access to the internet, possess or access any device with access to the internet. Id.

Plaintiff voluntarily agreed to all of the conditions imposed by Florida in return for his transfer from Wisconsin, supervision in Florida, and the ability to work and live with family. Defendants cite to a Florida case with similar circumstances, where the sexual offender probationer was transferred from Florida to Colorado under the Interstate Compact. Critelli v. State, 962 So. 2d 341, 342 (Fla. 4th DCA 2007). There, when the plaintiff requested the transfer, Colorado's acceptance was contingent upon Plaintiff's agreement to Colorado's conditions of probation. Id. at 343. The Fourth DCA noted that Plaintiff was aware of those conditions and he had the option to object to the conditions or decline the conditional transfer and remain in Florida. Id. The court held that the plaintiff "should not be able to accept the benefits of his transfer to Colorado, and then fail to carry out the required conditions." Id. at

Page 26 of 28

344 (citing Bashlor v. State, 586 So.2d 488, 489 (Fla. 1st DCA 1991) ("Absent some jurisdictional flaw, Florida courts have repeatedly held that sentences imposed in violation of statutory requirements, which are to the benefit of the defendant and to which he agreed, may not be challenged after the defendant has accepted the benefits flowing from the plea, but has failed to carry out the conditions imposed on him.")).

Likewise, Plaintiff cannot now refuse to follow Florida's conditions that he agreed to in order to secure his transfer to Florida. If Plaintiff did not want to comply with Florida's conditions, he had the option to stay in Wisconsin under Wisconsin's conditions of supervision. Moreover, under ICAOS Rule 4.103-1, Wisconsin, as the sending state, must give "the same force and effect to conditions" imposed by Florida as the receiving state "as if those conditions had been imposed by the sending state." Id. Plaintiff has not demonstrated that Florida's imposition of an internet restriction violates Interstate Compact or Plaintiff's equal protection rights.

**D. Eleventh Amendment Immunity**

Should the district court find that this action should not be dismissed for lack of subject matter jurisdiction or failure to state a claim, Defendants' motion to dismiss should be granted in part based on Eleventh Amendment immunity, which bars Plaintiff's claims for monetary damages against all

Defendants in their official capacity. See ECF No. 34 at 30–31; Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (reiterating that an official capacity claim is just "another way of pleading an action against an entity of which an officer is an agent," i.e., the State of Florida, and that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court"); Gamble v. Fla. Dep't of Health & Rehab. Servs., 779 F.2d 1509 (11th Cir. 1986) (noting that the State of Florida has not waived its Eleventh Amendment immunity or consented to be sued in federal court in § 1983 actions). Any claim for money damages against a Defendant in his or her official capacity should be dismissed pursuant to the Eleventh Amendment.

## IV. Recommendation

For the reasons stated above, it is respectfully **RECOMMENDED** that Defendants' motion to dismiss, ECF No. 34, be **GRANTED** and this action be **DISMISSED without prejudice** for lack of subject matter jurisdiction, or, alternatively, **DISMISSED with prejudice** for failure to state a claim.

Moreover, any claim for money damages against a Defendant in his or her official capacity should be **DISMISSED with prejudice** based on the Eleventh Amendment."

**IN CHAMBERS** at Tallahassee, Florida, on July 31, 2026.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).**